UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| United States of America, | ) | Criminal Action Nos.: 4:17-cr-01103-RBH-1, -3 |
|---|---|---|
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Ruben Rodriguez and | ) | |
| Abraham Arturo Rodriguez, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the Court on a motion to suppress brought by Defendants Abraham Arturo Rodriguez and Ruben Rodriguez (collectively, "Defendants").[1] The Court held an evidentiary hearing on September 5, 2018, and took the matter under advisement. The Court now denies the motion.

**Background**

Defendants are charged with conspiracy to distribute and possess with intent to distribute cocaine, in violation of 18 U.S.C. § 846. Their charge stems from a search of Unit 905 of Atlantic Breeze Ocean Resort, a condominium complex located at 1321 South Ocean Boulevard in North Myrtle Beach, South Carolina, and the recovery of approximately $143,640 and a quantity of cocaine from Unit 905. Law enforcement conducted this search pursuant to a warrant that was issued by federal Magistrate Judge Thomas E. Rogers, III, on November 5, 2017.

Special Agent Joseph G. Rieger of the Drug Enforcement Administration ("DEA") authored the affidavit supporting the search warrant. He gathered much of the information contained in the affidavit from other law enforcement officers, including DEA Task Force Officer Charlie Diaz. Agent Rieger and Officer Diaz testified at the evidentiary hearing regarding their respective roles in the investigation,

---

[1] Defendant Abraham Arturo Rodriguez originally filed the motion, *see* ECF No. 166, and Defendant Ruben Rodriguez subsequently joined in the motion without objection from the Government. *See* ECF Nos. 177 & 179.

and the Court finds their testimony credible.

## Discussion

Defendants move to suppress the evidence recovered from the search of Unit 905, arguing that there was no probable cause for the issuance of the search warrant and that the good faith exception does not apply. The Court disagrees.

**I.    Probable Cause**

Defendants argue probable cause was lacking because the confidential source ("CS") mentioned in Agent Rieger's affidavit "is unknown and has questionable reliability and trustworthiness." ECF No. 166 at p. 4. Specifically, they assert the affidavit lacks information linking the CS to the Fayetteville, North Carolina location searched on November 2, 2017, and the evidence recovered from that search. Defendants further argue that the affidavit is unclear whether the CS's information was based on firsthand knowledge or hearsay information. Finally, Defendants contend no information links Unit 905 to illegal activity.

The Fourth Amendment, which protects individuals from "unreasonable searches," provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The standard of review for a magistrate's determination of probable cause is one of great deference. *United States v. Blackwood*, 913 F.2d 139, 142 (4th Cir. 1990). A magistrate need only find, in a commonsense appraisal of the reliability and "basis of knowledge" of those offering hearsay evidence, that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). In reviewing the validity of a search warrant, the relevant inquiry is whether, under the totality of the circumstances, the issuing judge had

2

a substantial basis for concluding that there was probable cause to issue the warrant. *Gates*, 462 U.S. at 238–39. "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Id.* at 232.

The Court finds the warrant authorizing the search was not lacking in probable cause. First, while Agent Rieger's affidavit does not precisely spell out the CS's connection to the Fayetteville location, that connection is implicit when the affidavit is read as a whole. *See, e.g.*, *United States v. Ventresca*, 380 U.S. 102, 111 (1965) ("reading the affidavit as a whole" and concluding "the affidavit showed probable cause"). Paragraph 11 details the Fayetteville Police Department's ("FPD") search of "a location in the Fayetteville, NC area" and seizure of five kilograms of cocaine, half a kilogram of crack cocaine, approximately $58,000 in cash, and several firearms and cellular devices. The very next paragraph (Paragraph 12) begins by stating, "*As a result of the aforementioned investigative activities*, FPD investigators developed a confidential source[1] . . . ." (emphasis added). The footnote to this sentence states, "Agents believe the CS is credible and reliable based on the fact that information provided by the CS has been corroborated by physical surveillance. *The CS is cooperating in the hopes of receiving judicial consideration*, but has not been coerced or promised any such consideration in exchange for cooperation." (emphasis added). Thus, while the affidavit does not specify exactly how the CS was linked to the Fayetteville location (i.e, whether the CS was the owner, renter, or occupant), a fair reading of the affidavit as a whole reasonably indicates that the CS is facing prosecution in connection with the search of the Fayetteville location, which led agents to believe the CS was "credible and reliable." *See United States v. Harris*, 403 U.S. 573, 583 (1971) ("Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility—sufficient at least to support a finding of probable cause to search."); *United States v. Norman*, 379 F. App'x 311, 313 (4th

3

Cir. 2010) (giving weight to the fact that "[t]he affidavit reflected the investigating officer's professional opinion that [the informant]'s information was 'accurate and reliable'").

Moreover, the Court notes that although Defendants assert the CS "is unknown," ECF No. 166 at p. 4, the affidavit clearly indicates the CS is not an anonymous tipster but was "cooperating" with and known to the Fayetteville Police Department. *See United States v. Perez*, 393 F.3d 457, 464 (4th Cir. 2004) ("[T]he circumstances necessarily surrounding a face-to-face meeting alone provide certain indicia of credibility that are lacking when the warrant is based solely on a telephone call from an anonymous, never-to-be-identified informant.").

Second, even assuming the CS had no tie to the Fayetteville location that was searched, the Court notes the affidavit separately indicates the CS provided North Carolina authorities with detailed information connecting drug activity in Fayetteville with the address of 1321 South Ocean Boulevard in North Myrtle Beach, South Carolina. This information includes: (1) in October 2017, an individual known as "Abraham" and an unknown associate delivered thirty-two kilograms of cocaine to the Fayetteville area by utilizing a truck with a concealed compartment and diesel fuel cell in the cargo area; (2) on November 1, 2017, an unidentified Hispanic male associate of Abraham's traveled in a white Chevrolet Corvette to a Fayetteville residence and acquired $45,000 in cash as payment for the cocaine; (3) Abraham and his unknown associate(s) were supposed to facilitate the transportation of approximately forty-five kilograms of cocaine from Texas to the Myrtle Beach area on or about November 4, 2017, and fifteen of the forty-five kilograms were expected to be delivered to the Fayetteville area; and (4) Abraham and his unidentified associate(s) often operate out of South Carolina and frequently travel between Texas, South Carolina, and North Carolina in furtherance of their drug trafficking activities. Most notably, the CS consented to a search of a cellular phone and provided an

4

address of 1321 South Ocean Boulevard, North Myrtle Beach, South Carolina, potentially associated with Abraham and/or his criminal associate(s); and agents saw a text message that the CS received from an associate of Abraham listing the 1321 South Ocean Boulevard address.

Significantly, the affidavit indicates law enforcement corroborated the information supplied by the CS. This corroboration established the reliability and credibility of the CS and included, *inter alia*: seeing the text message on the CS's phone listing the 1321 South Ocean Boulevard address; reviewing surveillance footage of the Fayetteville residence identified by the CS and determining a 2017 Chevrolet Corvette had in fact traveled there; confirming the same Corvette was registered to Jesus Ivan Quintero (a codefendant) of Brownsville, Texas, thereby connecting Texas to one of the individuals; conducting surveillance on 1321 South Ocean Boulevard on November 3 and 4, 2017, and locating the same Corvette in the parking lot there; observing Quintero leave Unit 905,[2] departing in the Corvette, and returning to Unit 905; obtaining the rental itinerary for Unit 905 from management at the Atlantic Breeze Ocean Resort and learning the reservation (booked from October 11 through November 22, 2017) was in the name of Abraham Rodriguez (who had a Brownsville, Texas address), prepaid in cash for $2,620.80 (with Quintero listed as a guest and his credit card on file), and requested postponement of housekeeping services until the end of the itinerary, thus confirming the name "Abraham" and a Texas address. All the foregoing corroboration confirmed the 1321 South Ocean Boulevard address, and Unit 905 was developed through officer surveillance and information provided by resort management. Law enforcement's corroboration of these facts amply demonstrated the CS's veracity

---

[2] Defendants' argument that Unit 905 is not sufficiently identified in the affidavit is without merit. Paragraph 1 specifies Unit 905 is the place to be searched, and the shorthand phrase "Target Location" used throughout Agent Rieger's affidavit refers to Unit 905. Also, as discussed below, Attachment A to the affidavit contains a photograph depicting Unit 905.

5

and reliability. *See United States v. Lalor*, 996 F.2d 1578, 1581 (4th Cir. 1993) ("An important factor in determining whether an informant's report establishes probable cause is the degree to which it is corroborated. . . . Corroboration of apparently innocent details of an informant's report tends to indicate that other aspects of the report are also correct."); *id.* (explaining "police corroboration of innocent activity" can support a finding of probable cause" because "'probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity'"; and therefore, "'[i]nnocent behavior frequently will provide the basis for a showing of probable cause'" (quoting *Gates*, 462 U.S. 243 n.13)).

In sum, the Court finds that, under the totality of the circumstances, Agent Rieger's affidavit was sufficient to support a finding of probable cause to search Unit 905, and that the magistrate could infer that evidence of drug activity would be found at 1321 South Ocean Boulevard in Unit 905.

**II.     Good Faith Exception**

Even assuming *arguendo* that the warrant application failed to establish probable cause, the Court would still find the search valid under the good faith exception to the warrant requirement, as argued by the Government.

Under the good faith exception to the warrant requirement, "evidence obtained from an invalidated search warrant will be suppressed only if 'the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.'" *United States v. Lalor*, 996 F.2d 1578, 1583 (4th Cir. 1993) (quoting *United States v. Leon*, 468 U.S. 897, 926 (1984)). Ordinarily "a warrant issued by a magistrate . . . suffices to establish that a law enforcement officer has acted in good faith in conducting the search." *United States v. Perez*, 393 F.3d 457, 461 (4th Cir. 2004) (internal quotation marks omitted). The Court's analysis

6

is "confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal" in light of "all of the circumstances." *Leon*, 468 U.S. at 922 n.23. There are, however, four circumstances in which the good faith exception will not apply:

> (1) when the affiant based his application on knowing or reckless falsity; (2) when the judicial officer wholly abandoned his role as a neutral and detached decision maker and served merely as a "rubber stamp" for the police; (3) when the affidavit supporting the warrant was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when the warrant was so facially deficient that the executing officers could not reasonably have presumed that the warrant was valid.

*United States v. Wellman*, 663 F.3d 224, 228–29 (4th Cir. 2011); *see Leon*, 468 U.S. at 923.

Here, Defendants argue the third circumstance is present in their case; they assert Agent Rieger's affidavit was so lacking in indicia of probable cause so as to render belief in its existence entirely unreasonable.[3] The Court disagrees.

Agent Rieger's affidavit bears many of the indicia of a strong search warrant application. The affidavit reflects his reliance on information from other law enforcement officers (such as the Fayetteville Police Department and other DEA Agents including Task Force Officer J. Yowell in the Wilmington, North Carolina office). Authorities provided Agent Rieger with information from a variety of sources, including the evidence produced from the November 2 search of the Fayetteville location, the CS's tips, surveillance video of a Fayetteville residence, live surveillance of Unit 905 on 1321 South Ocean Boulevard, and the rental itinerary and information received from management at the Atlantic Breeze Ocean Resort. Agent Rieger detailed law enforcement's corroboration of the CS's tips—including the CS's information regarding 1321 South Ocean Boulevard in North Myrtle Beach,

---

[3] Defendants do not argue any of the other three circumstances in which the good faith exception will not apply.

7

South Carolina, and the potential link this location had to drug activity involving cocaine in Fayetteville—and how law enforcement surveilled that address and narrowed down the precise location in the multi-unit condominium complex to Unit 905. In fact, Agent Rieger attached to his affidavit not only a photograph of the Atlantic Breeze Ocean Resort complex but also a photograph of Unit 905 itself. Considering the totality of this information available to the magistrate judge, the affidavit was not so lacking in indicia of probable cause so as to render reliance on the warrant entirely unreasonable.

## Conclusion

For the foregoing reasons, the Court **DENIES** Defendants' motion to suppress [ECF No. 166].

**IT IS SO ORDERED.**

Florence, South Carolina  
September 6, 2018

s/ R. Bryan Harwell  
R. Bryan Harwell  
United States District Judge